HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CRAIG A. HARBAUGH (No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Petitioner
JULIUS OMAR ROBINSON

**FILED**

**February 28, 2018**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>        Defendant/Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | |
|---|---|
| JULIUS OMAR ROBINSON, <br><br> Defendant/Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y <br> (Criminal No. 4:00-CR-00260-2) <br><br> **DEATH PENALTY CASE** <br><br> Honorable Terry R. Means <br> United States District Judge <br><br> **MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |

Petitioner Julius Robinson moves pursuant to Federal Rule of Civil Procedure, Rule 60(b)(6) for relief from the judgment of this Court due to the extraordinary circumstances of this case. This motion is based on the attached memorandum of points and authorities and all the files and records of this case.

Respectfully submitted,

Dated: February 9, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

2

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I. BACKGROUND ......................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

      A.     The Lack of Due Process Afforded to Robinson Constitutes Extraordinary Circumstances Justifying Relief ............................................ 4

           1.     Robinson Was Wrongly Denied His Ability to Appeal Because This Court and the Fifth Circuit Applied an Erroneously High Standard for Obtaining a Certificate of Appealability ...................... 4

           2.     This Court Erroneously Barred Robinson From Conducting a Reasonable Investigation .................................................................... 9

           3.     This Court's Denial of Robinson's Right to Amend his Section 2255 Motion to Include His Indictment Claim was Erroneous ....... 12

                 a.     Procedural History of Robinson's Request to Amend .......... 12

                 b.     The Impact of *Weaver v. Massachusetts* ............................... 15

                 c.     *Weaver* Represents an Intervening Change of Law by the United States Supreme Court Which Permits Consideration of This Claim Despite the Fifth Circuit's Law of the Case Doctrine ......................................................... 18

      B.     This Motion is Timely ................................................................................. 19

III. CONCLUSION ....................................................................................................... 21

CERTIFICATE OF CONFERENCE ............................................................................ 22

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ............................................................................................... 12, 13

*Brady v. Maryland*,
373 U.S. 83 (1963) ....................................................................................................... 17

*Buck v. Davis*,
137 S. Ct. 759 (2017) ............................................................................................*passim*

*Christeson v. Roper*,
135 S. Ct. 891 (2015) ..................................................................................................... 4

*Clarke v. Burke*,
570 F.2d 824 (8th Cir. 1978) ....................................................................................... 20

*First Republic Bank Fort Worth v. Norglass, Inc.*,
958 F.2d 117 (5th Cir. 1992) .................................................................................. 19, 20

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) .............................................................................................. 1, 3, 20

*Jones v. United States*,
526 U.S. 226 (1999) ............................................................................................... 12, 13

*Jordan v. Fisher*,
135 S. Ct. 2647 (2015) ................................................................................................... 8

*Klapprott v. United States*,
335 U.S. 601 (1949) ........................................................................................................ 2

*Martinez v. Ryan*,
566 U.S. 1 (2012) .................................................................................................... 11, 20

*McKay v. Novartis Pharmaceutical Corp.*,
751 F.3d 694 (5th Cir. 2014) ....................................................................................... 19

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ........................................................................................... 4, 5, 7, 8

*Neder v. United States*,
527 U.S. 1 (1999) .................................................................................................... 13, 14

# TABLE OF AUTHORITIES

Page(s)

*Peña-Rodriguez v. Colorado*,
137 S. Ct 855 (2017)...............................................................................................*passim*

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ...............................................................................4

*Pippin v. Dretke*,
434 F.3d 782 (5th Cir. 2005) ..................................................................................5

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995)..................................................................................................2

*Presley v. Georgia*,
558 U.S. 209 (2010)................................................................................................ 15

*Ring v. Arizona*,
536 U.S. 584 (2002)......................................................................................... 12, 13

*Robinson v. United States*,
543 U.S. 1005 (2004) ......................................................................................... 1, 19

*Robinson v. United States*,
565 U.S. 827 (2011)................................................................................................. 1

*Ruiz v. Quarterman*,
504 F.3d 523 (5th Cir. 2007) ..................................................................................4

*Seven Elves, Inc. v. Eskenazi*,
635 F.2d 396 (5th Cir. 1981) ..................................................................................3

*Steverson v. GlobalSantaFe Corp.*,
508 F.3d 300 (5th Cir. 2007) ..................................................................................2

*Strickland v. Washington*,
466 U.S. 668 (1984)........................................................................................ 7, 8, 16

*Travelers Ins. Co. v. Liljeberg Enters., Inc.*,
38 F.3d 1404 (5th Cir. 1994) ................................................................................ 19

*Trevino v. Thaler*,
569 U.S. 413 (2013)............................................................................................... 20

*United States v. Cervantes*,
132 F.3d 1106 (5th Cir. 1998) ...............................................................................7

iii

## TABLE OF AUTHORITIES

Page(s)

*United States v. Cotton*,
535 U.S. 625 (2002).................................................................................. 13, 16

*United States v. Fernandez*,
797 F.3d 315 (5th Cir. 2015) ........................................................................... 3

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) ....................................................................................... 14

*United States v. Jones*,
614 F.2d 80 (5th Cir. 1980) ........................................................................... 18

*United States v. Kalish*,
780 F.2d 506 (5th Cir. 1986) ......................................................................... 18

*United States v. Matthews*,
312 F.3d 652 (5th Cir. 2002) ......................................................................... 18

*United States v. Resendiz-Ponce*,
549 U.S. 102 (2007)........................................................................................ 14

*United States v. Robinson*,
2010 U.S. App. LEXIS 11675 (5th Cir. 2010)....................................... 1, 7, 8

*United States v. Robinson*,
367 F.3d 278 (5th Cir. 2004) ................................................... 1, 13, 14, 18

*Vasquez v. Hillery*,
474 U.S. 254 (1986)........................................................................................ 18

*Washington v. Davis*,
2017 U.S. App. LEXIS 25832 (5th Cir. 2017).............................................. 9

*Weaver v. Massachusetts*,
137 S. Ct. 1899 (2017)............................................................................*passim*

*Williams v. Pennsylvania*,
136 S. Ct. 1899 (2016)............................................................................. 16, 17

*Williams v. Thaler*,
602 F.3d 291 (5th Cir. 2010) ............................................................... 2, 16, 18

iv

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Rules and Statutes**

28 U.S.C.§ 2253 ......................................................................................................... 4, 5, 6

28 U.S.C.§ 2255 .......................................................................................................*passim*

Federal Rule of Civil Procedure 60 ........................................................................*passim*

Federal Rule of Evidence 606................................................................................... 10

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

This Court sentenced Julius Robinson to death on June 5, 2002.  *United States v. Robinson*, CR-260-2, Dkt. No. 1740.  The Fifth Circuit affirmed Robinson's convictions and sentences, *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), and the Supreme Court denied certiorari.  *Robinson v. United States*, 543 U.S. 1005 (2004).

Robinson then moved, pursuant to 28 U.S.C. Section 2255, to vacate his convictions and sentences in this Court on November 29, 2005.  CR-260-2, Dkt. No. 2279.  In the course of litigating his Section 2255 motion, Robinson sought to interview the jurors from his capital trial, but the Court denied this request.  Dkt. No. 2388.  Robinson then sought to amend his Section 2255 motion to include a claim raised on direct appeal regarding the adequacy of the indictment, but the Court denied this request.  Dkt. No. 2430.  Notwithstanding the government's concession that Robinson was entitled to an evidentiary hearing on his penalty-phase ineffective assistance of counsel claim (dkt. nos. 2365 at 90, 2439 at 10), the Court summarily denied Robinson's Section 2255 motion and denied his request for a certificate of appealability.  Dkt. Nos. 2453, 2473.  The Fifth Circuit affirmed, *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010), and the Supreme Court denied certiorari, *Robinson v. United States*, 565 U.S. 827 (2011).

For over 12 years, Robinson has fought the unconstitutional denial of his due process rights to full and fair litigation of his Section 2255 claims. In the past year, the Supreme Court has issued three decisions which provide further support for the arguments Robinson has been making and establish once again that prior rulings in this case which precluded a full merits determination resulted in a "defect in the integrity of [his] federal habeas proceeding."  *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Specifically, the Supreme Court's decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), confirms that Robinson was erroneously denied a COA, which deprived him of a merits review of his appeal.  The Supreme Court's decision in *Peña-Rodriguez v. Colorado*,

1

137 S. Ct 855 (2017), confirms that Robinson was erroneously denied the opportunity to interview the jurors in his case which prevented Robinson from presenting a fully investigated Section 2255 motion to this Court, and prevented the Court from reviewing the merits of this case in its entirety.  Finally, the Supreme Court's decision in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), confirms that this Court erroneously denied Robinson's request to amend his Section 2255 motion.  Robinson moves to re-open the Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits.

## II.  ARGUMENT

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done.  *Klapprott v. United States*, 335 U.S. 601, 615 (1949).  Accordingly, Rule 60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice."  *Id*. at 615.  Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity."  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244 (1944).

The Fifth Circuit has long identified Rule 60(b)(6) "as 'a grand reservoir of equitable power to do justice in a particular case. . . .'" *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010) (quoting *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458 (5th Cir. 1992)); *see also Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (Rule 60(b)(6) "is a means for accomplishing justice in exceptional circumstances.") (internal citations omitted). Specifically,

[t]he purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default, [] or otherwise. By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (internal citations and quotations omitted) (emphasis added). While finality is important, "the justice-function of the courts demands that [finality] must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.* Thus, Rule 60(b) is "liberally construed in order to achieve substantial justice." *Id*. at 402.

Rule 60(b), "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings" and "has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534; *see, e.g., United States v. Fernandez*, 797 F.3d 315 (5th Cir. 2015) (applying Rule 60(b) in the context of an action initiated under Section 2255). District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Thus, a district court can consider a Rule 60(b) motion when a petitioner "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id*. at 532 n.4.

Rule 60(b) is particularly important where federal review of the merits of a petitioner's claims has been limited. Accordingly, the Fifth Circuit has held that the "'main application'" of Rule 60(b) "is to those cases in which the true merits of a case

3

might never be considered" and it has "reversed where denial of relief precludes examination of the full merits of the cause," because in such instances "even a slight abuse may justify reversal." *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (internal citations and quotations omitted); *see also Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard.").

To avail himself of relief under Rule 60(b), a petitioner must "demonstrate both the motion's timeliness and … that 'extraordinary circumstances justif[y] the reopening of a final judgment.'" *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (quoting *Gonzalez*, 545 U.S. at 535).

## A.   The Lack of Due Process Afforded to Robinson Constitutes Extraordinary Circumstances Justifying Relief

In the course of litigating his Section 2255 motion, Robinson has been denied: the ability to interview the jurors in his case; discovery and an evidentiary hearing; the right to amend his Section 2255 motion; and a certificate of appealability. Intervening Supreme Court caselaw reaffirms that these denials, which precluded a full and fair merits determination, were erroneous.

### 1.   Robinson Was Wrongly Denied His Ability to Appeal Because This Court and the Fifth Circuit Applied an Erroneously High Standard for Obtaining a Certificate of Appealability

To obtain a certificate of appealability ("COA"), a petitioner is required to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to meet that burden, the only issue is whether an applicant can show that "jurists of reason could disagree with the district court's resolution of his constitutional claims, or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As the Supreme Court has repeatedly held, the "established rule" for granting a COA

4

requires a court of appeals to "limit its examination to a threshold inquiry into the underlying merit of the claims,' and ask 'only if the District Court's decision was debatable.'" *Buck v. Davis*, 137 S. Ct. at 774 (citing *Miller-El*, 537 U.S. at 348). Section 2253(c)(2) sets forth a clear, "two-step process: an initial determination whether a claim is reasonably debatable, and then — if it is — an appeal in the normal course." *Id.* Obtaining a COA "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller–El*, 537 U.S. at 337. Moreover, in death penalty cases, "any doubt as to whether a COA should issue . . . must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In *Buck v. Davis*, the Supreme Court's most recent case on the COA standard, the petitioner requested a COA following the denial of a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). *Buck*, 137 S. Ct. at 773. However, rather than asking "only if the District Court's decision was debatable," *Miller-El*, 537 U.S. at 348, the Fifth Circuit "essentially decided the case on the merits" by finding that Buck had not shown the "extraordinary circumstances that would permit relief" under Rule 60(b)(6). *Id.* at 773-74. The Supreme Court found that the Fifth Circuit's COA denial in *Buck* was based upon "ultimate merits determinations [that] the panel should not have reached." *Id.* The Court explained that the Fifth Circuit's approach, which determined the merits of the appeal before and as part of its ultimate COA judgment, was an improper application of COA procedure:

> [T]he question for the Fifth Circuit was not whether Buck had "shown extraordinary circumstances" or "shown why [the State's actions] would justify relief from the judgment." Those are ultimately merits determinations the panel should not have reached.
>
> [. . .]

5

> Of course when a court of appeals properly applies the COA standard and determines that a prisoner's claim is not even debatable, that necessarily means the prisoner has failed to show that his claim is meritorious. But the converse is not true. That a prisoner has failed to make the ultimate showing that his claim is meritorious does not logically mean that he failed to make a preliminary showing that his claim was debatable. Thus, when a reviewing court (like the Fifth Circuit here) inverts the statutory order of operations and "first decid[es] the merits of an appeal, . . . then justif[ies] its denial of a COA based on its adjudication of the actual merits," it has placed too heavy a burden on the prisoner *at the COA stage*. *Miller-El*, 537 U.S. at 336-37. *Miller-El* flatly prohibits such a departure from the procedure described by § 2253.

*Id.* (italics in original).

As Robinson argued to this court, the Fifth Circuit, and the United States Supreme Court, these standards were not followed in Robinson's case. After summarily denying Robinson's Section 2255 motion (dkt. no. 2453), this Court, and later the Fifth Circuit, denied Robinson's request for a COA on his penalty-phase ineffective assistance of counsel claim. *See* Dkt. No. 2473; *United States v. Robinson*, No. 09-70020 (5th Cir. June 8, 2010). In response, Robinson argued that the District Court and the Fifth Circuit had effectively required Robinson to prove he would succeed on appeal before granting him the right to appeal — an approach which imposed an erroneously high standard on Robinson's COA requests, and failed to abide by the COA guidelines set forth by the Supreme Court. *Robinson v. United States*, Supreme Court Case No. 10-8146, Cert Petition filed December 22, 2010. The COA denials issued by this Court and by the Fifth Circuit in this case were improper because they were contrary to the requirements of Section 2253 and "placed too heavy a burden

on [Robinson] *at the COA stage*." *Buck*, 137 S. Ct. at 774 (italics in original) (internal citations omitted).

In order to be entitled to a COA, Robinson had to establish that it was at least debatable that he was deprived of the effective assistance of counsel at the penalty phase of his trial. This Court denied Robinson's request for a COA, finding that Robinson had failed to establish either *Strickland* prong. Dkt. No. 2473. Much of the Court's Order was a defense of the Court's merits denial. *Id*. at 3-4. The Court concluded that because "Robinson has not produced independent indicia of the likely merit of either prong… it does not appear that reasonable jurists would disagree with the denial of this claim." *Id*. at 4. The "independent indicia" standard is a Fifth Circuit construct that holds that a Section 2255 movant is entitled to an evidentiary hearing only if he "produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). In support of his Section 2255 motion, Robinson filed over 40 declarations from third parties, but the Court found that some of Robinson's declarants were not reliable. *See, e.g.,* Dkt. No. 2453 at 26 (finding witness's "credibility is questionable"). By definition, questionable credibility is at least debatable, and thus a COA should have issued. *Miller-El*, 537 U.S. at 336-37.

On review of Robinson's request for a COA, the Fifth Circuit skipped an analysis of the deficient performance prong, and instead decided that even if Robinson could establish deficient performance, he could not establish prejudice. *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010). Yet in so doing, the Fifth Circuit engaged in the same improper pattern that the Supreme Court has repeatedly condemned. For example, the Fifth Circuit decided that despite Robinson's specifically named deficiencies in the trial attorneys' representation, "no reasonable jurist would find that Robinson was prejudiced by the [] alleged deficiencies." *Id*. at *11. Similarly, the Fifth Circuit found that trial counsel was not ineffective for failing to

7

challenge the future dangerousness evidence because "no jurist of reason would believe that a dent in that evidence, which Robinson alleges, would have created a reasonable probability of a different verdict." *Id* at *11-12. And these are not isolated examples. *See id.* at *14 ("Robinson's case for a difficult childhood's mitigating his culpability is far less compelling than the showing in recent cases in which the Supreme Court found the omission of mitigation evidence prejudicial. … No reasonable jurist would find [the mitigation evidence's] omission prejudicial.").

Thus, the Fifth Circuit's sole reason for denying a COA is its belief that Robinson failed to establish prejudice — i.e., that he failed to win his *Strickland* claim on the merits. Yet as the *Buck* Court makes clear, it was error for the Fifth Circuit to make such merits determinations and *then* deny Robinson a COA. Whether a reasonable jurist would find prejudice is the ultimate issue to be decided. At the COA stage, the only relevant inquiry is whether reasonable jurists would debate whether Robinson could establish prejudice. "Indeed, a claim can be debated even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

The improper standard applied by the Fifth Circuit in *Buck* and in this case has been repeated in other cases. Since the Fifth Circuit's erroneous denial of Robinson's COA motion, the Supreme Court has continued to overturn Fifth Circuit COA denials, and recently referenced the Fifth Circuit's "troubling" pattern of misapplying Supreme Court precedent in denying COA's. *See, e.g., Jordan v. Fisher*, 135 S. Ct. 2647, 2652 n.2 (2015) (Sotomayor, J., dissenting from the denial of certiorari). The Fifth Circuit's practice has been to conduct "a detailed evaluation of the merits and then conclude[] that because [the petitioner] had "fail[ed] to prove" his constitutional claim, a COA was not warranted." *Fisher*, 135 S. Ct. at 2652 (Sotomayor, J., dissenting); *see e.g. Miller-El*, 537 U.S. 322. The Supreme Court in *Buck v. Davis* once again noted this pattern. *See* 137 S. Ct. at 773 ("The court below phrased its determination in proper terms — that jurists of reason would not debate that Buck should be denied relief, but it reached

8

that conclusion only after essentially deciding the case on the merits.") (citation to Fifth Circuit opinion omitted).

However, since *Buck v. Davis*, the Fifth Circuit appears to be making efforts to correct its approach. *See, e.g., Washington v. Davis*, 2017 U.S. App. LEXIS 25832, at *6-7 (5th Cir. 2017). In *Washington*, the panel granted a COA on several procedurally defaulted claims of ineffective assistance of counsel. *Id.* at *8-10. The panel acknowledged that the recent *Buck* decision made clear that "[w]hen a court of appeals sidesteps [the COA] process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication on the actual merits, it is . . . deciding an appeal without jurisdiction." *Id.* at *6 (citing *Buck*, 137 S. Ct. at 773). The panel also found that even though "[t]he State argues — with persuasive force — that the foregoing claims are unlikely to succeed on the merits," such disagreement between the State and defense "proves that Washington's claims are 'debatable' and thus warrant a COA." *Id.* at *11.

The analysis applied by the Fifth Circuit in *Washington* is in accordance with the standards set forth in *Buck,* and is the standard that the Court should have applied in Robinson's case. The Supreme Court's rejection of the Fifth Circuit's long-standing pattern of misapplying the COA standards is an "extraordinary circumstance" justifying re-opening this case under Rule 60(b)(6) and allowing Robinson to move for a COA.

**2.   This Court Erroneously Barred Robinson From Conducting a Reasonable Investigation**

After filing his initial Section 2255 motion, Robinson moved for permission to interview the jurors. Dkt. No. 2385. This Court denied Robinson's request, finding that Robinson had not provided any evidence that merited allowing Robinson to investigate possible juror misconduct. Dkt. No. 2388 at 2.

However, the Supreme Court's recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), supports Robinson's case for interviewing the jurors and demonstrates the error of this Court's decision. In that case, Peña-Rodriguez's counsel

9

was permitted to speak with the jurors, and two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Id.* at 861. Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862. Despite this evidence of juror misconduct the trial court denied the defense motion for a new trial, finding that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which renders inadmissible virtually any post-verdict juror statement concerning the contents of the jury's deliberations. *Id.* at 862. The Colorado Supreme Court affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to the general, firmly rooted provisions behind Rule 606(b). *Id.* at 862-63. The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way in order to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id.* at 869. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, just last term the Supreme Court reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck*, 137 S. Ct. at 778. Similarly, Julius Robinson is a black man who was capitally prosecuted in Texas — a state which leads the nation in federal capital convictions. Of the 13 federal capital convictions from the state of Texas, 9 defendants are black, 2 are white, and 2 are Latino.[1] Robinson was tried before a jury of 11 white people and 1 black man, whom

---

[1] These numbers were taken from the Death Penalty Information Center's website. Available at: https://deathpenaltyinfo.org/federal-death-row-prisoners#list. These numbers include Louis Jones and Juan Garza, both of whom have been executed.

10

the defense had unsuccessfully moved to strike for cause. Additionally, the Government was permitted to strike 7 of the 8 black jurors questioned during voir dire. Given the severity of Robinson's sentence, and the racial undertones of this capital prosecution, Robinson should be permitted to conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences.

The Supreme Court noted in *Peña-Rodriguez* that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id*. at 869. In Texas, however, Local Criminal Rule 24.1 prevents any contact between the parties and a juror absent permission of the court. This leaves Robinson entirely at the whim of the jurors and without a mechanism, practical or otherwise, for even investigating the type of misconduct at issue in *Peña-Rodriguez.*

Ultimately the *Peña-Rodriguez* case emphasizes that the specter of racial bias is an issue so repulsive that exceptions should be made to general rules to ensure that racism has not influenced criminal convictions or sentences. The Supreme Court has also emphasized the importance of investigation in the post-conviction context. *See, e.g., Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel). On balance, *Peña-Rodriguez* establishes that rules such as Local Criminal Rule 24.1 must allow criminal defendants an ability to investigate issues such as racial bias, and Robinson was deprived of this right. Robinson's inability to adequately investigate his case prevented a full and fair merits determination, which warrants re-opening the proceedings under Rule 60(b) and permitting Robinson to move the Court for an order growing Robinson access to the jurors from his trial.

11

### 3. This Court's Denial of Robinson's Right to Amend his Section 2255 Motion to Include His Indictment Claim was Erroneous

#### a. Procedural History of Robinson's Request to Amend

Prior to Robinson's trial, the Supreme Court held in *Jones v. United States*, 526 U.S. 226 (1999), that with respect to federal criminal prosecutions, the Fifth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial guarantees require that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. The Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) extended the *Jones* holding, with the exception of the indictment requirement, to state prosecutions under the Fourteenth Amendment.

When Robinson was tried, the Federal Death Penalty Act required that the Government present its aggravating factors to the petit jury, but did not require that they be charged by a grand jury in an indictment. As a result, the statutory aggravating factors that made Robinson eligible for death were not charged via indictment, and the grand jury returned an indictment charging only non-capital offenses. Regardless, the Government pursued the death penalty and presented statutory aggravating factors to the petit jury that were not subject to the Fifth Amendment's indictment clause.

Robinson filed a pretrial motion to disqualify the death penalty because the aggravating factors had not been presented to the Grand Jury. Dkt. No. 1443. This Court denied the defense motion, finding that the aggravating factors did not need to be presented to the jury because they "are merely sentencing factors, rather than facts that would enhance his punishment beyond that contemplated by the grand jury." Dkt. No. 1575 at 2 (citing *Apprendi*, 530 U.S. at 494 and n. 19).

Shortly after Robinson was sentenced to death, the Supreme Court issued *Ring v. Arizona*, 536 U.S. 584 (2002), which extended *Jones* and *Apprendi* and held that where an aggravating factor renders a defendant eligible for death, it is "the functional equivalent of an element of a greater offense" and therefore must be proven to a jury

12

beyond a reasonable doubt. *Id*. at 609. And as an element of a greater offense, the aggravating factor must be charged in an indictment. *Jones*, 526 U.S. at 243 n. 6; *Apprendi*, 530 U.S. at 476.

On appeal, Robinson re-raised this issue, arguing that *Ring* established what Robinson had contended all along — that the Fifth Amendment required statutory aggravating factors to be presented to the grand jury and charged in the indictment. The Government conceded that Robinson's Fifth Amendment rights had been violated. The controversial issue, however, was whether the constitutional violation was a structural error, as Robinson argued[2], or was subject to harmless error review, as the Government claimed. The Fifth Circuit agreed with Robinson's argument that "the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is constitutional error." *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004). Nevertheless, the court deemed this "constitutional error" non-structural, and ruled that the harmless-error analysis applied. *Id.* at 285.

In finding that the Government's failure to include statutory aggravating factors in the indictment was not structural error, the Fifth Circuit relied on *Neder v. United States*, 527 U.S. 1, 8 (1999), wherein the Supreme Court explained that structural errors tend to involve a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Robinson*, 367 U.S. at 285 (quoting *Neder*, 527 U.S. at 8). The court then examined *United States v. Cotton*, 535 U.S. 625 (2002), where the Supreme Court applied the plain error test to a forfeited claim that the government had failed to allege a fact that increased the statutory maximum

---

[2] Robinson has continually maintained that the indictment error that occurred in his case is a structural error. *See, e.g., United States v. Robinson*, Fifth Circuit Case No. 02-10717, Reply Brief filed 12/11/2003.

13

sentence in the indictment and found that the error did not affect the "fairness, integrity, or public reputation" of the proceedings. *Robinson*, 367 F.3d at 286 (quoting *Cotton*, 535 U.S. at 632-33). Reconciling the two cases, the Fifth Circuit held that if Cotton's indictment claim did not affect the fairness of the proceedings, then it could not be the type of structural error that the *Neder* Court described as "one that necessarily 'deprive[s] defendants of basic protections without which … no criminal punishment may be regarded as fundamentally fair.'" *Robinson*, 367 F.3d at 286 (quoting *Neder*, 527 U.S. at 8-9) (alterations in original). Applying the harmless error standard, the Fifth Circuit found that Robinson received adequate notice of the aggravating factors via the Government's "notice of intent to seek the death penalty," and although the court recognized its limitation in correcting this error on appeal, it found that any rational grand jury would have charged Robinson with the aggravating factors. *Id*. at 287-88.

After his conviction became final, Robinson moved to vacate his convictions and sentences under 28 U.S.C. Section 2255. Undersigned appointed counsel, however, had only four months to investigate the case and file the motion before the one-year statute of limitations would expire. After timely filing the Section 2255 motion, appointed counsel moved to amend the motion to include Robinson's indictment claim, arguing that intervening Supreme Court case law cast doubt over the Fifth Circuit's prior denial of the claim. Robinson's argument was that the Supreme Court's decisions in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), further clarified what constitutes a structural error, and they demonstrate that the Fifth Circuit's decision was erroneous. Dkt. No. 2422. The Court denied Robinson's request to amend, finding that because the new case law did not squarely address the issue, the cases were irrelevant. Additionally, the Court held that because the cases were not retroactive, they could not impact Robinson's case, which became final on direct review. *Id.* at 3. The Court subsequently denied Robinson's Section 2255 motion. Dkt. Nos. 2453, 2454.

14

### b.      The Impact of *Weaver v. Massachusetts*

On June 22, 2017, the Supreme Court issued *Weaver v. Massachusetts*, 582 U.S. ___, 137 S. Ct. 1899 (2017), in which the defendant claimed his trial attorney had been ineffective for failing to object when the trial court barred the public from portions of the jury selection process, in violation of his right to a public trial under *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam).  There was no dispute that Weaver's right to a public trial had been violated and that such error is structural.  At issue, however, was whether in the context of trial counsel's failure to object to the closure of the courtroom, Weaver needed to show prejudice to establish his ineffective assistance of counsel claim, or if prejudice would simply be presumed because the error that counsel failed to object to was structural.  *Id*. at 1907.

The Court began with its most expansive definition of structural errors to date, explaining that structural errors tend to arise in three circumstances.  "First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest."  *Id*. at 1908.  The Court provided a defendant's right to self-representation as an example of this type of structural error.  "Second, an error has been deemed structural if the effects of the error are simply too hard to measure."  *Id*.  The denial of a defendant's right to select her own attorney is an example of this type of structural error.  *Id*.  And "[t]hird, an error has been deemed structural if the error always results in fundamental unfairness."  *Id*.  The denial of an indigent defendant's right to counsel is one such example.  *Id*.  Notwithstanding these three rationales, the Court cautioned that these categories are not rigid and explained: "one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case."  *Id*.  After reaffirming that the error there was structural, and the reasons therefore, the Court set out to decide the remedy for a structural error not objected to at trial and raised on appeal via an ineffective assistance of counsel claim.  The Court ultimately held that this error, when raised via an ineffective assistance claim, required a showing of

15

prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984).  Part of the Court's reasoning was based on the value of preserving a claim and raising it on direct review versus forfeiting the claim and raising it in a collateral proceeding.  The Court explained that the former allows the trial court to correct its error or explain its reasoning, while the latter deprives the trial court of any ability to cure the error and generally comes to light years after the fact.  *Id.* at 1912.

*Weaver* casts serious doubt on the Fifth Circuit's decision in this case in two significant ways.  First, *Weaver* reiterated yet again the value of not waiving a valid claim for appeal.  Had Weaver's counsel simply preserved a claim challenging the structural error present in his case, Weaver would have been entitled to a new trial.  Yet contrary to the approach in *Weaver*, the Fifth Circuit's decision in *Robinson* equated waived claims with non-waived claims.  In relying on *Cotton*, a case about a defective indictment claim which was not preserved for appeal, the Supreme Court applied plain error review.  The Fifth Circuit expanded that logic to Robinson's non-waived indictment error claim, overlooking the significance of Robinson's preservation of his claim.  In essence, the Fifth Circuit treated Robinson's claim as if it were not preserved for appeal, and *Weaver* affirms that this was erroneous.  There is no logical basis for treating Robinson as if his claim was waived; Robinson gave the Court the opportunity to correct the Government's error, and the Government had the ability to supersede its indictment.  Yet, this did not occur, and the result should not affect Robinson's ability to defend his rights.  Second, *Weaver* establishes that structural errors do not always implicate fairness.  But the Fifth Circuit's analysis of whether Robinson's claim was structural depended almost entirely on "fundamental fairness."

In addition to *Weaver*, the Supreme Court's recent decision in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), reinforces the veracity of Robinson's argument.  In *Williams*, the issue was whether a claim of judicial bias qualified as a structural

16

error.  There, Williams had won post-conviction relief on a *Brady*[3] claim in the state trial court.  The state appealed to the Pennsylvania Supreme Court, whose chief justice had previously been the District Attorney at the time of Williams' trial and authorized seeking capital punishment against Williams.  *Id*. at 1903-05.  Williams responded to the state's pleadings in the state supreme court and filed a motion asking the chief judge to recuse himself, or if he declined to have the full court consider the recusal motion.  The chief judge denied the motion and the full court, including the chief judge, reversed the lower court's grant of post-conviction relief and reinstated the death penalty against Williams.  *Id*. at 1905.  On review to the Supreme Court, the Court held that the chief justice's failure to recuse himself violated Williams' Fourteenth Amendment due process rights.  The Court held that because the judge had a significant, personal involvement as a prosecutor in the defendant's case, there was an impermissible risk of actual bias.  *Id*. at 1905.  The Court then had to decide if this due process violation amounted to structural error.  The novel issue in this case was the fact that the Court was looking at one possibly biased jurist on a multi-judge panel and the biased jurist's vote was not outcome determinative.  *Id*. at 1909.  While it might seem obvious that a prejudice analysis could simply examine whether the biased judge's vote was outcome determinative, the Court rejected this explaining that the deliberations of an appellate panel are generally confidential and thus "it is neither possible nor productive to inquire whether the jurist in question might have influenced the views of his or her colleagues during the decision making process."  *Id*.  The Court continued that even if the disqualified judge's vote was totally unnecessary to the outcome of the case, "[t]hat outcome does not lessen the unfairness to the affected party" of having a biased jurist decide his case.  *Id*.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

17

The Supreme Court's ruling that it is neither possible nor productive to inquire into the interworkings of proceedings that are confidential runs contrary to the Fifth Circuit's inquiry into the confidential grand jury proceedings in Robinson's case and how they might have voted had a statutory aggravating factor been presented to them. *See Robinson*, 367 F.3d at 288 ("any rational grand jury would find probable cause to charge Robinson with at least one of the statutory aggravating factors omitted from his indictment."); *see also Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (finding racial discrimination in the selection of grand jurors to be a structural error because "even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come."). Indeed, the Court's analysis in *Williams* establishes that the indictment error at issue in Robinson is structural because it falls under *Weaver's* rubric of an error whose effects are "simply too hard to measure." *Weaver,* 137 S. Ct. at 1908.

      **c.**      ***Weaver* Represents an Intervening Change of Law by the United States Supreme Court Which Permits Consideration of This Claim Despite the Fifth Circuit's Law of the Case Doctrine**

The Fifth Circuit has created a rule that bars Section 2255 litigants from raising claims that were previously denied on appeal. *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980); *United States v. Kalish*, 780 F.2d 506 (5th Cir. 1986). This Court cited that rule, which is akin to the law of the case doctrine, in response to Robinson's motion to amend, and that rule will surely be in play when considering this motion. However, the law of the case doctrine is subject to three exceptions: (1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *United States v. Matthews*, 312 F.3d 652, 657 (5th

18

Cir. 2002). *Weaver* satisfies the second exception and establishes that the earlier decision is clearly erroneous, and would manifest injustice especially considering that this is a death-penalty case. As such, the denial of amendment should be reconsidered in light of these recent cases.

**B.      This Motion is Timely**

Robinson has diligently pursued his rights. He timely appealed his convictions and sentences in this Court and timely filed his Section 2255 motion and related appeals. When those actions were all denied, Robinson timely filed a petition in the Inter-American Commission on Human Rights. *Robinson v. United States*, P-561-12.

Robinson has filed this motion under Federal Rule of Civil Procedure, Rule 60(b)(6). A motion brought pursuant to Rule 60(b)(6) must be filed within a reasonable time to be considered timely. Rule 60(c)(1). "The timeliness of the motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *First Republic Bank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992). Once a party has grounds to make a Rule 60(b) motion, however, they must bring the motion reasonably promptly, though "the determination of reasonableness is less than a scientific exercise." *Id.* at 121.

The Fifth Circuit has held that "[a] district court is provided wide discretion in determining whether a Rule 60(b) motion is filed within a reasonable time." *McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694, 701 n. 5 (5th Cir. 2014) (citations omitted). In this inquiry, the "particular facts of the case in question" determine whether a motion has been timely filed. *Id.* Further, in determining whether a motion has been filed within a reasonable time, the Fifth Circuit instructs that district courts should consider: (1) "the interest in finality;" (2) "the reason for delay;" (3) "the practical ability of the litigant to learn earlier of the grounds relied upon;" and (4) "prejudice to other parties." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (internal citations and quotation marks omitted).

19

The interest in finality has been minimized by the Supreme Court in the context of a Rule 60(b) motion because the purpose of Rule 60(b) is to create an exception to finality. *Gonzalez*, 545 U.S. at 520 ("[Finality], standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality."). Setting aside the first factor, Robinson has good reason for any delay, as this motion is largely based upon three recent Supreme Court decisions —*Buck, Peña-Rodriguez, Weaver* — which were issued less than a year from the date of filing this motion. The third factor also weighs in Robinson's favor because he obviously could not have known how these decisions would impact his case before the Supreme Court issued their opinions. Indeed, the Fifth Circuit has legitimized waiting for subsequent decisions to be issued before filing a Rule 60(b) motion. *See First Republic Bank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120-21 (5th Cir. 1992) (citing, with approval, *Clarke v. Burke*, 570 F.2d 824, 831-32 (8th Cir. 1978) (where the "movants acted reasonably in waiting for the district court's decision in a later, but related, case before filing the Rule 60(b) motion because it was the unfavorable ruling in the later case that precipitated the need for the Rule 60(b) motion."). Finally, the government will not suffer prejudice if the Court grants this motion. While the Supreme Court opinions upon which this motion is based are new, the underlying issues have been previously argued in this case. As a result, the government should be familiar with these issues and not prejudiced by the timing of this motion.

Returning to *Buck v Davis,* the Supreme Court overturned the Fifth Circuit's denial of a COA and found that Buck had demonstrated entitlement to relief under Rule 60(b)(6). 137 S. Ct. 759 (2017). The Supreme Court reached this decision notwithstanding that Buck's motion primarily relied on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), but was filed almost two years after *Martinez* was decided and 8 months after *Trevino* was decided. *Id.* at 767, 771. Robinson's motion is being filed less than one year after *Buck* was decided and approximately seven months after *Weaver* was decided. *Buck*

20

establishes that Robinson has filed his motion within a reasonable time, and the Court should exercise its discretion and find Robinson's motion timely.

### III.   CONCLUSION

For all of the foregoing reasons, Robinson respectfully requests that the Court grant this motion.

Respectfully submitted,

Dated:  February 9, 2018

/s/ Jonathan C. Aminoff
JONATHAN C. AMINOFF
CELESTE BACCHI
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

21

## CERTIFICATE OF CONFERENCE

Counsel for Julius Robinson, Celeste Bacchi and Jonathan Aminoff, and counsel for the government, Alex Lewis, conferred on February 9, 2018.  Counsel for Robinson had e-mailed counsel for the government a brief summary of the contents of this motion on February 8 such that the parties could more meaningfully discuss the issues.  An agreement could not be reached, however, due to disagreement over the issues in question and the government opposes this motion.


Dated:  February 9, 2018                    */s/ Jonathan C. Aminoff*
                                           JONATHAN C. AMINOFF

22