IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIUS OMAR ROBINSON,
          Movant,

v.

UNITED STATES OF AMERICA,
          Respondent.

No.    4:05-CV-756-Y
        (4:00-CR-260-Y-2)

## GOVERNMENT'S RESPONSE TO RULE 60 MOTION

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
tim.funnell@usdoj.gov

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

GOVERNMENT'S RESPONSE TO RULE 60 MOTION ................................................. 1

STATEMENT OF THE CASE ................................................................................. 1

STATEMENT OF THE ISSUES ............................................................................... 5

ARGUMENT AND AUTHORITES ............................................................................ 5

STANDARD OF REVIEW ..................................................................................... 5

DISCUSSION ................................................................................................... 8

    1.    Robinson's resort to Rule 60(b)(6) is unavailing ......................................... 8

        A.    Robinson's circumstances are not remotely similar to
those that the Supreme Court in *Buck* found extraordinary
under Rule 60(b)(6) .............................................................................. 9

        B.    Because the exception recognized in *Peña-Rodriguez*
does not apply here, it cannot support Robinson's claim
under Rule 60(b)(6) ............................................................................ 15

        C.    Robinson cannot demonstrate extraordinary circumstances
arising from *Weaver* to justify relief under Rule 60(b)(6) .............. 20

        D.    Robinson's motion is untimely ....................................................... 23

CONCLUSION ................................................................................................. 24

CERTIFICATE OF SERVICE ................................................................................ 25

ii

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010) ........................................................... 7

*Buck v. Davis*, 137 S. Ct. 759 (2017) ................................................... 8, 9, 10, 11

*Davis v. Kelley*, 855 F.3d 833 (8th Cir. 2017) .................................................... 12

*Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013) ................................................. 21

*Dillingham v. Jenkins*, No. 17-3813, 2017 WL 5438882 (6th Cir. 2017) ......................... 15

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ......................................................... 5, 6, 7, 20

*Haynes v. Quarterman*, 526 F.3d 189 (5th Cir. 2008) ........................................................ 4

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014) ................................................................ 7, 14

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017) ............................................................. *passim*

*Lambrix v. Sec'y Dep't of Corr.*, 851 F.3d 1158 (11th Cir. 2017) .................................... 12

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) ............................. 11

*Miller v. Mays*, 879 F.3d 691 (6th Cir. 2018) .................................................... 11

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) .................................................... 4, 10

*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017); ......................................... 8, 16, 17, 18

*Ruiz v. Davis*, 850 F.3d 225 (5th Cir. 2017) .................................................... 13

*United States v. Fleming*, 2017 WL 3411920 (S.D. Tex. June 21, 2017) ......................... 10

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) .............................................. 20, 21

*United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002) ........................................... 15, 23

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ................................................... 20

*United States v. Robinson*, 367 F.3d 278, *cert. denied*, 543 U.S. 1005 (2004) .................. 1

**Federal Cases (cont.)**                                                                          **Page(s)**

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) ............................................8, 20, 21, 22

*Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) ......................................................20, 22

**Federal /State Statutes and Rules**

28 U.S.C. § 2244 ............................................................................................................. 6

28 U.S.C. § 2255(h) ......................................................................................................... 6

Fed. R. Civ. P. 60(b)(6) ................................................................................................... 5

Colorado Rule of Evidence 606(b) ................................................................................ 17

## GOVERNMENT'S RESPONSE TO RULE 60 MOTION

Robinson's motion should be denied because it fails to meet the restrictive standards for relief under Rule 60(b)(6).  To the extent that it raises new claims, it should be transferred to the Fifth Circuit as a second or successive motion under Section 2255.

## STATEMENT OF THE CASE

In March 2002, a jury found Robinson guilty of the murders of Johnny Lee Shelton and Juan Reyes and of complicity in a criminal enterprise resulting in the death of Rudolfo Resendez.  (CR No. 1641.)[1]  In June 2002, the Court accepted the jury's recommendation and sentenced Robinson to death for the murders of Shelton and Reyes and life in prison for the death of Resendez.  (CR No. 1740.)  In 2004, the Fifth Circuit affirmed the judgment and the Supreme Court denied review.  *See United States v. Robinson*, 367 F.3d 278 (5th Cir.), *cert. denied*, 543 U.S. 1005 (2004).

In November 2005, Robinson filed his first motion for post-conviction relief under Section 2255.  (CR No. 2279.)  He claimed that he received ineffective assistance of trial counsel, was denied equal protection and due process, and was entitled to a new trial.  (CR Nos. 2279; 2422; 2432.)  Over the ensuing months and years, he supplemented his post-conviction claims with additional arguments and evidence, and ultimately, the Section 2255 filings before the Court included his initial motion, the government's response, his reply, his amendment to the motion, his supplemental pleading, the

---

[1] "CR No. __" refers to the docket of the criminal proceeding and "CV No. __" refers to the docket of this Section 2255 action.

1

government's response to the supplemental pleading, and his reply in support of his supplemental pleading.  (CR Nos. 2279; 2365; 2380; 2422; 2432; 2439; 2443.)

In January 2008, the Court denied Robinson's request to amend his Section 2255 motion by adding a defective-indictment claim.  (CR No. 2430.)  The Court determined that the issue was barred because it was decided adversely on direct appeal; the recent Supreme Court cases that Robinson cited were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's.  (*Id.* at 2-4.)

In November 2008, the Court issued a 46-page memorandum opinion and written order denying Robinson's Section 2255 motion.  (CR No. 2453.)  It concluded that an evidentiary hearing was unnecessary because "the record . . . , including the exhibits submitted by Robinson with his motion, [did] not create any contested fact issues that [were required to] be resolved in order to decide Robinson's claims."  (*Id.* at 45.)  It further explained that an evidentiary hearing was not required for the following reasons:

> With regard to the claims for which Robinson has submitted additional evidence, the Court has decided these claims either by assuming that everything Robinson alleges is true or based on legal, not factual, bases.  Accordingly, because the record before this Court shows conclusively that Robinson is not entitled to relief, his request for an evidentiary hearing is denied.

(*Id.* at 45-46.)  Having assumed the truth of Robinson's factual allegations, the Court concluded that each of his claims lacked merit.  (*See generally id.* at 14-45.)

Robinson moved for reconsideration, claiming that the Court's denial of an evidentiary hearing was a "manifest error of law."  (CR No. 2456 at 3.)  The government

opposed the motion, (CR No. 2464), and on February 17, 2009, the Court issued an order

denying reconsideration, (CR No. 2465).  First, it observed that because the cases cited

by Robinson were inapplicable, its decision to deny relief was not manifestly wrong.  (*Id.*

at 2-4.)  Next, it rejected each of Robinson's points of error, repeating its earlier

determination that an evidentiary hearing was unnecessary because the claims were

conclusively resolved based on (i) legal questions and (ii) facts that were undisputed or

assumed be true as Robinson had alleged.  (*Id.* at 4-7.)  The Court made clear that an

evidentiary hearing was pointless because its analysis did not suffer from factual gaps or

disputes:

> As the Court held in its memorandum opinion and order denying Robinson's motion to vacate (Doc. #2453), the record before this Court, including the exhibits submitted by Robinson with his motions, do not create any contested fact issues with regard to Robinson's insufficiency-of-counsel claims that must be resolved in order to decide his case.  To the contrary, many of Robinson's claims are based on the record from the trial. And, with regard to the claims for which Robinson has submitted additional evidence, the Court has decided these claims based on uncontested allegations of fact and, where facts are contested, by assuming that what Robinson alleges is true, or based on legal, not factual, bases. Accordingly, because the record before this Court shows conclusively that Robinson is not entitled to relief, his motion to reconsider the Court's denial of his request for an evidentiary hearing on his remaining claims for relief is DENIED.

(*Id.* at 7.)

In conjunction with Robinson's Section 2255 motion—and of relevance here—he

moved for permission to interview jurors during the post-conviction proceedings.  (CR

No. 2385.)  The government opposed the motion, (CR No. 2387), and in a written order,

the Court denied the request without a hearing, (CR No. 2388).  It explained that

Robinson did "not state that he ha[d] any reason to suspect that his jury was actually

partial, but merely point[ed] to the importance of his right to an impartial jury under the

Sixth Amendment and argue[d] that he ha[d] no other way of discovering whether this

right has been violated than to interview his trial jurors." (*Id.* at 1.)  It also rejected his

alternative request to interview a prospective-but-excused juror regarding a potential

*Batson* violation.  (*Id.* at 1, 4.)  It determined that Robinson's hypothetical *Batson*

challenge was unrelated to the prosecutor's state of mind in exercising the peremptory

strike, and thus, "the requested permission for a post-trial interview of this prospective

juror would appear neither useful to a *Batson* analysis nor necessary to protect any of

[Robinson]'s rights." (*Id.* at 4.)

In April 2009, Robinson moved for a certificate of appealability ("COA") from the

denial of Section 2255 relief.  (CR No. 2467.)  The Court issued a written order denying

Robinson's request for a COA.  (CR No. 2473.)  In it, the Court applied Supreme Court

and Fifth Circuit precedent governing the COA determination, including *Miller-El v.

Cockrell*, 537 U.S. 322 (2003), and *Haynes v. Quarterman*, 526 F.3d 189 (5th Cir. 2008).

(*See generally id.*)

Having been denied post-conviction relief and a COA by this Court, Robinson

moved the Fifth Circuit for authorization to appeal.  In June 2010, the Fifth Circuit

denied Robinson's request for a COA, and in August 2010, it denied his petition for panel

rehearing and rehearing en banc.  (*See* CV Nos. 5-6.)  Robinson then sought relief before

the Supreme Court, which denied certiorari review on October 3, 2011.  (*See* CV No. 7.)

4

On February 9, 2018, more than six years and four months after the denial of certiorari, Robinson filed the Rule 60(b)(6) motion at issue here.  (CV No. 10.)

## STATEMENT OF THE ISSUES

Rule 60(b)(6) authorizes relief from final judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Robinson contends that this provision permits him to raise the following challenges to the denial of Section 2255 relief:

- First, that this Court and the Fifth Circuit applied an "erroneously high standard" in denying his "request for a COA on his penalty-phase ineffective assistance of counsel claim."  (CV No. 10 at 4-9.)

- Second, that this Court "erroneously barred [him] from conducting a reasonable investigation" when it denied his motion to interview jurors.  (*Id.* at 9-11.)

- Third, that the indictment suffered from "structural error" because it did not include "aggravating factors," so this Court's "denial of [his] right to amend his Section 2255 motion to include his [defective] indictment claim was erroneous."  (*Id.* at 12-19.)

## ARGUMENT AND AUTHORITIES

### Standard of Review

Robinson's instant motion relies exclusively on Rule 60(b)(6), which "is a catchall provision that allows a court to grant relief 'from a final judgment, order, or proceeding' for 'any other reason that justifies relief.'"  *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (quoting Fed. R. Civ. P. 60(b)(6)).  To succeed, movants under Rule 60(b)(6) "must show: (1) that the motion [was] made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment."  *Id.* (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

5

In addition, "[b]ecause of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *Id.* (citing as exemplary *Gonzalez*, 545 U.S. at 531-32). In that regard, the determinative inquiry is whether "the Rule 60(b) motion seeks to advance new claims or seeks instead to show a non-merits-based defect in the district court's earlier decision on the federal habeas petition." *Id.* Thus, a district court "examining a Rule 60(b) motion should determine whether [the motion] either: (1) presents a new habeas *claim* . . . , or (2) 'attacks the federal court's previous resolution of a claim *on the merits*.'" *Id.* (quoting *Gonzalez*, 545 U.S. at 530) (emphasis in original). A purported Rule 60(b) motion that does either of these "should be treated as a successive habeas petition and subjected to AEDPA's limitation on such petitions." *Id.*; *see also* 28 U.S.C. §§ 2244 & 2255(h).[2]

"A federal court resolves a [habeas] claim on the merits when it determines that there are or are not 'grounds entitling a petitioner to habeas corpus relief . . . ,' as opposed to when a petitioner alleges 'that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" *Id.* at 204 (quoting *Gonzalez*, 545 U.S. at 3). Again, "to bring a proper Rule 60(b) claim, a movant must show 'a non-merits-

---

[2] In particular, "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

based defect in the district court's earlier decision on the federal habeas petition.'" *Id.*

(quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)).  "Accordingly, if the

Rule 60(b) motion attacks 'some defect in the integrity of the federal habeas

proceedings,' rather than the resolution on the merits, then the motion is not treated as a

second-or-successive petition." *Id.* (quoting *Gonzalez*, 545 U.S. at 532).

The Fifth Circuit has emphasized that "it is extraordinarily difficult to bring a

claim of procedural defect rather than a successive habeas claim." *Id.* at 205.  Indeed, in

evaluating the nature of a motion brought under Rule 60,

> [p]rocedural defects are narrowly construed.  They include fraud on the habeas court, as well as erroneous previous rulings which precluded a merits determination—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of limitations bar.  They generally do not include an attack based on the movant's own conduct, or his habeas counsel's omissions, which do not go to the integrity of the proceedings, but in effect ask for a second chance to have the merits determined favorably.

*Id.* (quoting *In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014) (holding that arguments

regarding counsel's neglect of specific arguments sounded in substance, not in

procedure)).

**Discussion**

**1.   Robinson's resort to Rule 60(b)(6) is unavailing.**

Robinson's motion challenges three "erroneous" post-conviction rulings by this Court and the Fifth Circuit under Section 2255.  (*See generally* CV No. 10.)  He contends that each ruling evinces a "defect in the integrity" of the Section 2255 proceedings that satisfies Rule 60(b)(6)'s standard of "any other reason that justifies relief."  (CV No. 10 at 1-2, 4.)  To that end, Robinson tethers his motion to three Supreme Court decisions: *Buck v. Davis*, 137 S. Ct. 759 (2017); *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017); and *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017).  He posits that these decisions "provide further support for the arguments [he] has been making and establish once again that prior rulings in this case . . . precluded a full merits determination[.]" (*See id.*)

Robinson fails to demonstrate that he is entitled to relief under Rule 60(b)(6).  The rule is limited to correcting procedural errors that occurred during the post-conviction proceedings, which explains Robinson's repeated reference to procedural-defect allegations throughout his current motion.  His arguments, however, reveal that he is seeking a second chance to have the same issues determined in his favor.  But absent extraordinary circumstances, which Robinson cannot demonstrate, Rule 60(b) does not serve that purpose.  Procedural defects are "narrowly construed" under Rule 60(b) and reviewing courts are cautioned to be wary of second or successive Section 2255 motions brought under the "guise" of the rule.  *See Edwards*, 865 F.3d at 203, 205.  Robinson's motion does not satisfy these narrow standards, and to the extent that it asserts new

8

claims, he must obtain circuit-court authorization to file it as a second or successive motion under Section 2255(h).

### A. Robinson's circumstances are not remotely similar to those that the Supreme Court in *Buck* found extraordinary under Rule 60(b)(6).

Robinson contends that this Court and the Fifth Circuit applied an "erroneously high standard" in denying his "request for a COA on his penalty-phase ineffective assistance of counsel claim." (CV No. 10 at 4-9.) In support, he cites *Buck v. Davis*, 137 S. Ct. 759 (2017), as "the Supreme Court's most recent case on the COA standard[.]" (CV No. 10 at 5.) Because *Buck*'s holding is inapposite to Robinson's circumstances, its recency is likewise immaterial.

*Buck* involved a death-penalty defendant whose ineffective-assistance-of-counsel ("IAC") claim had "never been heard on the merits in any court[.]" 137 S. Ct. at 767. The IAC claim arose from sentencing-phase testimony by the defense's expert, who opined that Buck's race was relevant to future dangerousness and rendered him "statistically more likely to act violently because he is black." *Id.* The prosecutor cited the expert's testimony during closing argument, and after two days of deliberations, the jury returned a sentence of death. *Id.* at 769. Buck's post-conviction counsel failed to raise the IAC claim in state court, and on federal habeas review, the district and circuit courts determined under then-existing law that the claim was unreviewable on the merits based on procedural default. *Id.* at 767, 770-73.

Buck then moved for relief from judgment under Rule 60(b)(6). He argued that several factors amounted to extraordinary circumstances under the rule, including: two

9

recent Supreme Court cases that "changed the law in a way that provided an excuse for his procedural default"; his trial attorney's introduction of expert testimony linking his race to increased propensity for violence; the prosecutor's questioning and arguments on the topic; and the state's confession of error in other cases involving the same expert but no concession of error in Buck's case. *Id.* at 767, 772.  The district court denied relief, concluding that Buck failed to demonstrate extraordinary circumstances and that "even if the circumstances *were* extraordinary," the IAC claim "would fail on the merits."  *Id.* at 772 (emphasis in original).  In denying Buck's request for a COA, the circuit court agreed with the district court that the circumstances were "not extraordinary at all in the habeas context."  *Id.* at 773.  The panel reasoned that two factors—the changes in procedural-default law and the state's inconsistent positions regarding confessed error— were not significant, and that "most of the other factors" were "variations on the merits" of Buck's IAC claim.  *Id.*

On certiorari review, the Supreme Court repeated without modification the well-established COA standards from its prior decision in *Miller-El*, which permitted a threshold inquiry into the merits of the district court's decision and required only that the decision was debatable among jurists of reason.  *Id.* at 773-74, 777-78 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).[3]  The issue, therefore, was whether it was debatable

---

[3] *See also United States v. Fleming*, Case No. H-07-513-01, 2017 WL 3411920, *1 (S.D. Tex. June 21, 2017) (unpublished) ("According to Defendant, *Buck* sets forth new standards for granting a certificate of appealability that, had this Court utilized them, would have resulted in the granting of habeas relief or a COA.  Defendant is incorrect.  *Buck* did not set forth new standards regarding a COA; to the contrary, the Supreme Court in *Buck* confirmed and enforced existing Supreme Court standards which this Court followed in denying Defendant a COA.")

10

that Buck failed to show extraordinary circumstances under Rule 60(b)(6). *Id.* at 777-78. "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors[, which] may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Id.* at 778 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)). Considering those factors, the Court had no difficulty concluding that reversal was required by the strong evidence of racial bias offered at Buck's sentencing that may have impacted the jury's recommendation to impose a death sentence. *Id.* at 777-78. In fact, the "extraordinary nature of [Buck's case was] confirmed by what the State [of Texas] itself did in response to [the defense expert's] testimony"—taking the "remarkable steps" of confessing error in other cases where the same expert testified but not confessing error in Buck's case. *Id.* at 778-79.

*Buck*'s limited holding is unavailing to Robinson. As the Supreme Court emphasized, Rule 60(b)(6) relief was justified in *Buck* based on extraordinary evidence of racial bias that was unduly minimized on federal habeas review and never considered on the merits by any reviewing court. In contrast, Robinson's trial and sentencing involved no evidence of racial bias or other circumstances remotely equivalent to those in *Buck*, and Robinson's post-hoc request to interview jurors was—as this Court correctly observed—wholly unsupported by evidence of bias. (*See* CR No. 2388.) Circuit courts have rejected similar attempts by death-row inmates under Rule 60(b)(6) to ignore and distort *Buck*'s central holding. *See Miller v. Mays*, 879 F.3d 691, 702 (6th Cir. 2018) (emphasizing that *Buck* did not turn on changes in the law regarding ineffective

representation but instead "focused on" the extraordinary circumstances presented by "the injection of race into the sentencing determination, the state's actions [of confessing error] in similar cases, and notions of finality"); *Davis v. Kelley*, 855 F.3d 833, 836 (8th Cir. 2017) (holding that Davis "failed to present extraordinary circumstances mirroring those presented in *Buck*"; "*Buck* focused on the race-based nature of the case and its far reaching impact on the community by the prospect of a defendant having been sentenced to death because of his race"; the "extraordinary facts [presented in *Buck*] have no application to the present case"); *Lambrix v. Sec'y Dep't of Corr.*, 851 F.3d 1158, 1172-73 (11th Cir. 2017) ("Lambrix's underlying ineffective-trial-counsel claims do not present allegations that his trial counsel presented race-based evidence of future dangerousness, the underlying issue that the Supreme Court found so 'odious' and poisonous in *Buck*.").

In addition, unlike in *Buck* where the ineffective-assistance claim had never been decided on the merits by any court, Robinson had the benefit of an on-the-merits ruling from this Court. Although no evidentiary hearing was held, Robinson had ample opportunity to advance his claims and develop the record during three-plus years of Section 2255 litigation. Indeed, the voluminous post-conviction filings considered by the Court included Robinson's initial motion, the government's response, his reply, his amendment to the motion, his supplemental pleading, the government's response to the supplemental pleading, and his reply in support of his supplemental pleading. (CR Nos. 2279; 2365; 2380; 2422; 2432; 2439; 2443.) The Court's written orders made clear that it was able to conclusively resolve the claims by assuming the truth of Robinson's

12

allegations and making legal determinations—thereby obviating the need for a hearing. (CR Nos. 2453 at 45-46; 2465 at 7.)

In sum, the circumstances presented here are not the least bit similar to those that the Supreme Court found extraordinary in *Buck*. Unable to rely on *Buck*'s reasoning and holding, Robinson can only cite it as the high court's most recent COA-related decision. But again, *Buck* is not remarkable in that regard.[4] It reaffirmed settled law governing COAs from its prior decision in *Miller-El*, and even Robinson acknowledges that he already "argued to this [C]ourt, the Fifth Circuit, and the United States Supreme Court [that] these standards were not followed in [his] case." (CV No. 10 at 6.) Thus, Robinson implicitly concedes that the COA argument he makes here under the pretense of Rule 60(b)(6) is the same one that he exhausted in the normal course of post-conviction litigation where each reviewing court—including the Supreme Court—considered the issue and universally denied relief.

Against this unbroken history of COA denials based on the application of settled law, Robinson's extraordinary-circumstances argument falls flat. Again, (i) *Buck* did not change the Supreme Court's COA jurisprudence in *Miller-El*; (ii) Robinson is reprising the same argument here that he previously made before this Court, the Fifth Circuit, and the Supreme Court; and (iii) his current argument, therefore, is functionally equivalent to "ask[ing] for a second chance to have the merits determined favorably" and would

---

[4] *Cf. Ruiz v. Davis*, 850 F.3d 225, 230 (5th Cir. 2017) (denying death-penalty defendant's request for a COA based on a cruel-and-unusual-punishment claim, observing: "We are keenly aware of the admonitions of *Buck v. Davis*. Properly applied, they do not reset the balance of federalism struck by Congress and the settled constitutional commands attending capital punishment.").

13

require this Court to disregard the narrow construction afforded to Rule 60(b) motions. *See Edwards*, 865 F.3d at 205; *Coleman*, 768 F.3d at 371-72.  This Court should reject Robinson's unsanctioned resort to Rule 60(b)(6).

Moreover, this Court and the Fifth Circuit correctly applied the controlling standards in denying Robinson's request for a COA.  (*See* CR No. 2473 at 2; CV No. 5 at 5.)  Both courts followed *Miller-El*'s holding—and therefore *Buck*'s holding as well—by conducting a threshold inquiry into the merits of Robinson's claims.  This Court denied a COA after it determined that the Section 2255 motion lacked merit, but its written order supports that the COA denial was not pre-ordained by its denial on the merits; instead, its COA analysis was properly framed under the objective standards of *Miller-El*, *Haynes*, and other cases.  (*See* CR No. 2473 at 2-3.)[5]  Likewise, the Fifth Circuit's denial of a COA correctly applied the *Miller-El* standards by limiting its consideration of the merits to a "threshold inquiry."  (*See* CV No. 5 at 4-5.)  Robinson's ongoing dissatisfaction with the COA denials does not permit their relitigation—under Rule 60(b)(6) or otherwise— simply because the Supreme Court has issued a new decision applying the same unchanged standards.  Put simply, *Buck*'s reiteration of well-established principles governing COAs does not show extraordinary circumstances that support a procedural-defect argument under Rule 60(b)(6).

---

[5] It is axiomatic that this Court acted in full accord with its obligations under Section 2255 when it addressed the COA issue *after* it ruled on the merits of Robinson's motion.  *See* Rule 11(a) Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  Thus, the Court's issuance of an on-the-merits decision does not suggest that it pre-judged the COA determination.

14

Even assuming for the sake of argument that this Court and the Fifth Circuit misapplied the COA standards, Rule 60(b)(6) affords Robinson no relief in this Court. In that scenario, this Court's COA denial became moot when the Fifth Circuit affirmed the ruling, thereby making the circuit court's determination the law of the case. *See Dillingham v. Jenkins*, No. 17-3813, 2017 WL 5438882, *1 (6th Cir. 2017) (unpublished) (affirming denial of Rule 60 motion because "[r]easonable jurists would also not find debatable or wrong the district court's assessment that this Court's denial of a [COA] became the law of the case, binding in subsequent stages of the litigation"). As to the Fifth Circuit's ruling, this Court cannot overturn it absent intervening authority that changed the law or a determination that it was clearly erroneous and would work a manifest injustice. *See United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). *Buck* provides no such authority because it produced no such change, and there is no indication that the Fifth Circuit's decision was clearly wrong considering its adherence to *Miller-El*'s standards and the fact that the Supreme Court left it undisturbed on certiorari review.

For these reasons, *Buck* fails to provide Robinson with extraordinary circumstances that present "any other reason that justifies relief" under Rule 60(b)(6).

**B.    Because the exception recognized in *Peña-Rodriguez* does not apply here, it cannot support Robinson's claim under Rule 60(b)(6).**

Robinson's Rule 60(b) motion also claims that during the Section 2255 proceedings, this Court "erroneously barred [him] from conducting a reasonable investigation" into the possibility of a racially biased jury because "Criminal Local Rule

15

24.1 prevents any contact between the parties and a juror absent permission of the court."
(CV No. 10 at 9-11.)  Robinson relies on a recent Supreme Court case—*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)—to contend that "[o]n balance, *Peña-Rodriguez* establishes that rules such as Local Criminal Rule 24.1 must allow criminal defendants an ability to investigate issues such as racial bias, and [he] was deprived of this right."  (*Id.* at 11.)  According to Robinson, this alleged deprivation constitutes a procedural defect under Rule 60(b)(6) because it "prevented a full and fair merits determination" of the prospect of juror bias.  (*Id.*)

  *Peña-Rodriguez*'s narrow holding, however, does not require or authorize a suspicionless investigation into the possibility of racial bias.  In fact, it preserves rules that prohibit post-verdict contact with jurors, including "no-impeachment" rules that forbid using jurors' post-trial statements to undermine the verdict.  Although the Court in *Peña-Rodriguez* crafted a limited constitutional exception to such rules, the exception has no applicability here because Robinson has not produced clear and admissible evidence of juror bias.

  After Pena-Rodriguez was found guilty of unlawful sexual contact and harassment, the trial court instructed the jurors—as mandated by Colorado law—that it was "entirely [their] own decision" to "discuss this case with the lawyers, defendant, or other persons" and they should notify the court "[i]f any person persists in discussing the case over [their] objection[.]"  137 S. Ct. at 861.  Following the jury's discharge, defense counsel entered the jury room to discuss the trial with jurors and two of them privately told counsel that "another juror had expressed anti-Hispanic bias toward [Pena-

<div align="center">16</div>

Rodriguez] and [his] alibi witnesses." *Id.* Counsel reported this to the court, and with the

court's supervision, obtained sworn affidavits from the two jurors that "described a

number of biased statements made by . . . Juror H.C." *Id.* at 861-62. Based on the

affidavits, the court "acknowledged H.C.'s apparent bias" but denied a motion for a new

trial because the deliberations could not be impeached under Colorado Rule of Evidence

606(b). *Id.* at 862.

On review, the Supreme Court framed the question as "whether there is an

exception to the no-impeachment rule when, after the jury is discharged, *a juror comes*

*forward with compelling evidence* that another juror made clear and explicit statements

indicating that racial animus was a significant motivating factor in his or her vote to

convict." *Id.* at 861 (emphasis added). It recognized the respective governmental roles

involved, observing: "The duty to confront racial animus in the justice system is not the

legislature's alone. Time and again, this Court has been called upon to enforce the

Constitution's guarantee against state-sponsored racial discrimination in the jury system."

*Id.* at 867. Ultimately, it determined that the Constitution required a narrow exception to

no-impeachment rules, reasoning: "This case lies at the intersection of the Court's

decisions endorsing the no-impeachment rule and its decisions seeking to eliminate racial

bias in the jury system. The two lines of precedent, however, need not conflict." *Id.*

Having expressed its intention to reconcile rather than void no-impeachment rules, the

Court held:

> [W]here a juror *makes a clear statement* that indicates he or
> she relied on racial stereotypes or animus to convict a criminal
> defendant, the Sixth Amendment requires that the no-

17

> impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Id.* at 869 (emphasis added).

In addition to requiring "a clear statement" of a juror's racial bias rather than an "offhand comment," the Court addressed the permissible manner of obtaining such evidence. *Id.* In that regard, the *Peña-Rodriguez* Court reaffirmed the viability of no-contact and no-impeachment rules, stating: "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* It recognized that "[t]hese limits seek to provide jurors some protection when they return to their daily affairs after the verdict has been entered. But while a juror can always tell counsel they do not wish to discuss the case, *jurors in some instances may come forward of their own accord. That is what happened here*." *Id.* (emphasis added).

Unlike in *Peña-Rodriguez*, Robinson's post-conviction allegations of juror bias were—and still are—purely hypothetical. Jurors in Robinson's trial did not "come forward of their own accord" with a "clear statement" of bias; indeed, they did not allege racial bias at all. Nor did Robinson discover evidence of racial bias in another fashion. Accordingly, in denying Robinson's post-conviction motion to interview jurors, this Court's written order highlighted that Robinson's motion did "not state that he ha[d] any reason to suspect that his jury was actually partial, but merely point[ed] to the importance of his right to an impartial jury under the Sixth Amendment and argue[d] that he ha[d] no

<div align="center">18</div>

other way of discovering whether this right has been violated than to interview his trial jurors." (CR No. 2388 at 1.)   It also determined that because his theoretical *Batson* challenge was unrelated to the prosecutor's state of mind in striking a particular juror, "the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of [Robinson]'s rights." (*Id.* at 4.)   Even now, Robinson's circumstances are not remotely similar to those in *Peña-Rodriguez* because he does not support his suppositions of bias with evidence. Instead, he resorts to alleging "the specter of racial bias" and superficially cites 13 federal death-penalty cases from Texas without providing necessary context and analysis to prove their relevance here.  (CV No. 10 at 10.)

In sum, Robinson cannot avoid the undeniable reality that his post-conviction motion to interview jurors was a fishing expedition into the possibility of juror bias.  This Court's denial of that request in no way violated *Peña-Rodriguez*'s limited holding, and therefore, its ruling evinces no procedural defect and no extraordinary circumstances justifying relief under Rule 60(b)(6).  In fact, to adopt Robinson's juror-bias argument and grant post-conviction relief would require this Court to extend *Peña-Rodriguez* in a manner that the Supreme Court did not sanction and carefully avoided—judicially voiding no-contact and no-impeachment rules rather than harmonizing them with the Constitution.  For these reasons, Robinson's claim of jury bias lacks a jurisdictional basis under Rule 60(b)(6) and must be dismissed.  To the extent that he argues for the extension of *Peña-Rodriguez* to conduct post-conviction discovery into the possibility of

19

a racially biased jury, the claim must be transferred to the Fifth Circuit for authorization to proceed under Section 2255(h).

### C.   Robinson cannot demonstrate extraordinary circumstances arising from *Weaver* to justify relief under Rule 60(b)(6).

Lastly, Robinson's Rule 60(b) motion asserts that the indictment's failure to include "aggravating factors" violated the Fifth Amendment and therefore, this Court's "denial of [his] right to amend his Section 2255 motion to include his [defective] indictment claim was erroneous." (CV No. 10 at 12-19.) In support, he cites *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), which, according to Robinson, "represents an intervening change of law" on the issue of "structural error." (*Id.*) He further contends that "[i]in addition to *Weaver*, the Supreme Court's recent decision [regarding judicial bias] in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), reinforces the veracity of [his] argument." (*Id.* at 16-17.) Once again, Robinson fails to demonstrate extraordinary circumstances under Rule 60(b)(6).

On January 7, 2008, this Court entered its written order denying Robinson's request to add the defective-indictment claim to his Section 2255 motion. (CR No. 2430 at 2-4.) At the time, Robinson asserted that "two recent United Supreme Court decisions cast serious doubt" on the Fifth Circuit's direct-appeal ruling, which held Robinson was not harmed by the error. (*See id.* (citing CR No. 2422).)[6] This Court denied the proposed amendment because the issue was already decided on direct appeal; the cases cited by

---

[6] Robinson cited *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), and *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

Robinson were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's. (*Id.*) The Fifth Circuit affirmed this Court's ruling when it denied his request for a COA and his request for rehearing. (*See* CV Nos. 5-6.) Now, for the second time, Robinson cites two recent Supreme Court cases—*Weaver* and *Williams*—as "cast[ing] serious doubt" over the Fifth Circuit's decision. (CV No. 10 at 15-17.)

Robinson's contention that *Weaver* marks a change in the Supreme Court's structural-error jurisprudence may be construed as a new habeas claim that must be transferred to the circuit court under Section 2255(h). *See Edwards*, 865 F.3d at 203. Alternatively, if Robinson alleges that the prior rulings of this Court and the Fifth Circuit were procedurally wrong based on *Weaver*, it is clear that "a change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment under Rule 60(b)(6)." *Diaz v. Stephens*, 731 F.3d 370, 375-76 (5th Cir. 2013) (citations and quotation marks omitted). That principle applies with full force here because *Weaver*, and for that matter *Williams*, have no direct applicability to Robinson's defective-indictment claim and extending them beyond their holdings is not authorized under Rule 60(b)(6).

In *Weaver*, the issue was whether—in the context of collateral review—courtroom closure was structural error that obviated the need to demonstrate prejudice or "if the prejudice inquiry is altered when structural error is raised in the context of an ineffective-assistance-of-counsel claim." 137 S. Ct. at 1905. The Supreme Court ultimately

determined that the public-trial right was structural and "generally" requires "automatic reversal" on direct appeal, but the right was "subject to exceptions" and therefore Weaver must demonstrate prejudice under *Strickland*. *Id.* at 1908-10. In reaching this somewhat-meandering result, the Court was required to engage in a comprehensive review of structural error, the public-trial right, and the right to effective counsel. *See generally id.* Illustrative of the complexity of the Court's analysis, it recognized that classifying errors as structural "varies in a significant way from error to error"; "[t]here appear to be at least three broad rationales" to address the issue; the three "categories are not rigid"; and "although the public-trial right is structural, it is subject to exceptions." *Id.* at 1907-08.

Like *Weaver*, *Williams* was unrelated to a defective-indictment claim. In that case, the Court held that where a state supreme court justice—while previously serving as a district attorney—officially approved seeking the death penalty against Williams, due process required the judge to recuse himself from post-conviction review of the death sentence. 136 S. Ct. at 1903.

Thus distilled, *Weaver* and *Williams* cannot support Robinson's request for relief under Rule 60(b)(6). *Weaver* focused on the right to a public trial vis-à-vis an ineffective-assistance claim, which required a searching analysis by the Supreme Court into the hard-to-define topic of structural error. *Williams* dealt exclusively with the issue of judicial bias under the rubric of due process. Both cases were completely silent on the unrelated issue of the Fifth Amendment's indictment clause. Their holdings, therefore, provide Robinson no basis to assert that the prior rulings of this Court and the Fifth Circuit on the defective-indictment claim were "clearly erroneous." (CV No. 10 at 18.)

22

Nothing in *Weaver* or *Williams* would change this Court's prior determination that the issue was already decided on direct appeal; the cases cited by Robinson were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's. (*See* CR No. 2430.) Likewise, neither case would undermine the Fifth Circuit's denial of a COA on the defective-indictment claim, (*see* CV No. 5), which represents the law of the case that this Court cannot overturn. *See Matthews*, 312 F.3d at 657. Because Robinson's cavalier conclusions to the contrary are unsupportable, he fails to demonstrate extraordinary circumstances under Rule 60(b)(6).

### D. Robinson's motion is untimely.

Motions under Rule 60(b)(6) must be made within a reasonable time unless good cause can be shown for the delay. *Edwards*, 865 F.3d at 203 (citations omitted). Good cause is "evaluated on a case-by-case basis" and timeliness "is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *Id.* (citations omitted). A party with grounds to make a Rule 60(b) motion must bring it "reasonably promptly, though the determination of reasonableness is less than a scientific exercise," and the rule "may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially meaningless." *Id.* (citations omitted).

By these standards, Robinson's motion should be dismissed as untimely. His reference to diligently pursuing his rights by the timely pursuit of his prior appeals is irrelevant to his instant motion, which was filed on February 9, 2018—more than six

23

years and four months after the Supreme Court denied review of his Section 2255

judgment.  (*Compare* CV No. 10, *with* CV No. 7.)  His instant motion asserts no newly

discovered evidence, claiming instead that he "has good reason for any delay, as [the]

motion is largely based upon three Supreme Court decisions—*Buck*, *Peña-Rodriguez*,

*Weaver*—which were issued less than a year from the date of filing this motion."  (CV

No. 10 at 20.)  But for reasons previously discussed, none of those cases assists Robinson

in meeting his burden of showing extraordinary circumstances under Rule 60(b)(6).

Accordingly, they are equally meaningless as a basis for timeliness.

## <u>CONCLUSION</u>

Robinson's motion should be dismissed.

<div style="margin-left: 50%;">

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
tim.funnell@usdoj.gov

</div>

<div style="text-align: center;">24</div>

## CERTIFICATE OF SERVICE

I certify that on April 30, 2018, I filed this response with the clerk of court for the U.S. District Court, Northern District of Texas through the electronic filing system which will generate service to Robinson's counsel, Jonathan Charles Aminoff.

*s/ Timothy W. Funnell*

Timothy W. Funnell
Assistant United States Attorney

25