HILARY POTASHNER (No. 167060)
Federal Public Defender
CRAIG A. HARBAUGH (No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Petitioner
JULIUS OMAR ROBINSON

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>    Defendant/Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT** |

## I.  ARGUMENT

**A.     Robinson's Motion is Appropriately Considered Under Rule 60(b)**

**1.     Robinson's Rule 60 Motion is not a Second or Successive Habeas Petition**

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court held that Federal Rule of Civil Procedure Rule 60 is applicable to habeas corpus proceedings, but cautioned that courts should be wary of second or successive habeas petitions disguised as Rule 60 motions.  The Court explained that a Rule 60(b) motion "that seeks to revisit the federal court's denial *on the merits* of a claim for relief should be treated as a successive habeas petition."  *Id*. at 534 (emphasis added).  But where the motion "confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding," that motion is not a second or successive petition, but rather is a valid exercise of Rule 60(b).  *Id.*  Indeed a motion that "challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3)."  *Id.* at 538.

Here, Robinson's motion raises three issues.  First, Robinson challenges the denial of a certificate of appealability ("COA").  A COA denial is, by definition, a non-merits based decision.  *Gonzalez v. Thaler*, 565 U.S. 134 (2012); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (explaining that until a COA is granted, a reviewing appellate court may not rule on the merits of the case).  Second, Robinson challenges a discovery denial, specifically the Court's rejection of his request to interview his trial jurors.  The denial of discovery is not a decision on the merits of a claim.  *See, e.g., In re Sessions*, 672 F.2d 564, 566 (5th Cir. 1982) (differentiating orders denying discovery from final orders dispensing of cases on the merits).  And third, Robinson challenges the Court's denial of his request for leave to amend his section 2255 motion which, again, is a procedural denial, not a denial of a claim on its merits.  *Flores v. Stephens*, 794 F.3d 494, 502 (5th Cir. 2015).  Each of these issues address "erroneous previous rulings

1

which precluded a merits determination," and thus are appropriate for review under Rule 60(b). *In re Edwards*, 865 F.3d 197, 205 (5th Cir. 2017).

The Government's assertion that Robinson is actually "seeking a second chance to have the same issues determined in his favor" is flawed. Dkt. No. 14 ("Opposition") at 8. The Government cannot honestly claim that the rulings Robinson challenges are anything but procedural. Moreover, whether granting Robinson's Rule 60(b) motion ultimately leads to an opportunity for Robinson to litigate his substantive claims for relief is not part of the analysis at this stage. Indeed, in the habeas context, any time a court grants a Rule 60(b) motion in the habeas petitioner's favor, the substance of the habeas petition will ultimately be litigated. In fact, in *Gonzalez*, 545 U.S. 524 (2005), the Supreme Court found that challenging a timeliness denial via a Rule 60(b) motion was a proper function of a Rule 60(b) motion, which, if granted, would obviously allow the habeas petitioner to litigate his underlying substantive claims for relief. Thus whether Robinson is ultimately trying to reach the merits of claims that were never decided on their merits is irrelevant to the Rule 60(b) standards that this Court must follow.

### 2.     Robinson has Established Extraordinary Circumstances

Relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535. Determining whether such circumstances are present may include consideration of a wide range of factors, including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-864 (1988).

The Fifth Circuit has described "a lack of fundamental fairness essential to due process" as an extraordinary circumstance, albeit not in the Rule 60(b) context. *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972). Robinson has been sentenced to death without the procedural due process afforded to most death-sentenced inmates that has deprived him of a full and fair merits determination of his case in post-conviction review. The lack of due process is inconsistent with the Supreme Court's

Eighth Amendment jurisprudence that requires "heightened reliability" in the context of death-penalty proceedings. *Woodson v. North Carolina*, 428 U.S. 280 (1976).

Generally a change in decisional law, standing alone, is not enough to amount to an extraordinary circumstance. *Diaz v. Stephens*, 731 F.3d 370, 375-76 (5th Cir. 2013); *but see Adams v. Merill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989) ("In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under [Rule] 60(b)(6)."). But the Fifth Circuit has kept open the possibility that a change in law, in the appropriate case, can constitute an extraordinary circumstance. *Batts v. Tow Motor Forklift*, 66 F.3d 743, 748 n.6 (1995) ("We do not hold that a change in decisional law can never be an extraordinary circumstance."). Courts have noted that Rule 60(b)(6) relief is especially appropriate in cases where the interest in finality is somehow abrogated. *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund.*, 249 F.3d 519, 528 (6th Cir. 2001) (collecting cases). The Fifth Circuit has recognized that habeas cases fit the bill of cases with a diminished interest in finality. *Batts*, 66 F.3d at 748 n.6 ("Courts may find a special circumstance warranting [Rule 60(b)(6)] relief where a change in the law affects a petition for habeas corpus, where notions of finality have no place."). Moreover, in a case where the decisional law in question affects issues of fundamental fairness and due process, this Court should follow the approach taken in *Diaz,* 731 F.3d at 376-77, and consider additional equitable factors when deciding whether extraordinary circumstances exist to warrant Rule 60(b)(6) relief. In *Diaz*, the Fifth Circuit evaluated a number of equitable factors which apply to Rule 60(b) motions generally, including:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether[,] if the judgment was a default or a dismissal in which there was no

consideration of the merits[,] the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether[,] if the judgment was rendered after a trial on the merits[,] the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Id.* at 377. An evaluation of these equitable considerations weighs heavily in Robinson's favor. As described in his motion and *supra*, he is not using his motion as a substitute for appeal. While habeas courts have some interest in finality, that interest may not outweigh a petitioner's right to a full and fair consideration of the merits of his claims, especially in a case like this one, where procedural rules foreclosed merits consideration of his Rule 60(b) issues in their entirety. There are no intervening equities that would make it inequitable to grant relief, as the Government has not alleged that they will be prejudiced in any way by re-opening this case and allowing Robinson to interview the trial jurors, brief the availability of a COA, and amend his section 2255 motion to include his indictment error claim which, the parties and the Fifth Circuit agree, resulted in a deprivation of Robinson's constitutional rights. Finally, as the Supreme Court and this Circuit have ruled time and again, the Rule should be liberally construed in cases like this one, where the denial of the motion would result in a fundamental injustice. *See, e.g.*, *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) ("[Rule 60] should be liberally construed in order to do substantial justice. What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in

4

order that the judgment might reflect the true merits of the cause.") (Internal citations omitted).

**B.      The Supreme Court's Prior Denials of Robinson's Petitions for Writ of Certiorari Have No Bearing on the Issues Before the Court**

In its Opposition, the Government continually makes reference to the fact that the United States Supreme Court has twice denied certiorari in this case:  once on direct review and once following the Fifth Circuit's denial of a COA after this Court denied Robinson's section 2255 motion.  The Government argues that because the Supreme Court left the Fifth Circuit's decision "undisturbed," this Court may assume that the Fifth Circuit's decision was not "clearly wrong."  Opposition at 15.  The Government's argument has been rejected by both the Supreme Court and the Fifth Circuit, and it should be absolutely clear that: "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *Atlantic Coast Line R. Co. v. Powe*, 283 U.S. 401, 404 (1931) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)); *Darr v. Burford,* 339 U.S. 200, 227 (1950) (Frankfurter, J., dissenting) ("Nothing is more basic to the functioning of this Court than an understanding that denial of certiorari is occasioned by a variety of reasons which precludes the implication that were the case here the merits would go against the petitioner"); *Eastburn v. Ford Motor Co.*, 438 F.2d 125, 126 (5th Cir. 1971) (same).

**C.      *Buck* Establishes a "Troubling" Pattern of Holding Petitioners to an Erroneously High Standard for Obtaining Certificates of Appealability**

Robinson relies on the Supreme Court's recent decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), to establish that this Court and the Fifth Circuit erroneously denied him a COA, thus depriving him of the right to a merits-based determination of his case on appeal.  In its Opposition, the Government resorts to a lengthy summation of the *Buck* case and explains how Buck's substantive claims for relief differ from Robinson's claims.  This is, however, a red herring and the Government's Opposition misses the point.  Robinson does not argue that *Buck* is a similar factual case to his.  Instead,

5

Robinson relies on *Buck* to establish the Fifth Circuit's "troubling" "pattern" of denying COAs "after engaging in extensive review of the merits of a habeas petitioner's claims." *Jordan v. Fisher*, 135 S. Ct 2647, 2652 n.2 (2015) (Sotomayor, J., dissenting from the denial of certiorari and collecting cases). And to establish that his case fits into this troubling pattern, Robinson cites to multiple instances in both this Court's and the Fifth Circuit's denials wherein the Courts conducted a merits-based analysis to deny Robinson's COA application. *See* Motion at 7-8. The Government, however, fails to respond to the specifics of Robinson's argument, instead opting to make blanket statements that because this Court and the Fifth Circuit cited to cases articulating the appropriate COA standard, the Court must have denied Robinson's COA request based on a correct application of those standards. Not surprisingly, the Fifth Circuit also cited to the appropriate COA standard in *Buck*, but nevertheless applied those standards incorrectly. *Buck v. Stephens*, 623 Fed. Appx. 668, 671-72 (5th Cir. 2015) *overruled by Buck v. Davis*, 137 S. Ct. 759 (2017).

**D.    Robinson was Barred from Conducting a Reasonable Investigation Which Prevented a Full and Fair Post-Conviction Review Process**

This Court's procedural rulings have placed Robinson in a catch-22: to establish racial bias, he must investigate; to be permitted to investigate, he must establish racial bias. The Government endorses this catch-22, arguing that Robinson "has not produced clear and admissible evidence of juror bias" while also arguing that Robinson has been correctly denied the right to interview the jurors that recommended a death judgment in his case. Opposition at 16.

Both Robinson and the Government cite to the Supreme Court's language in *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), where the Court states "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." 137 S. Ct. at 859-60. As Robinson argued in his Motion, however, Local Criminal Rule 24.1 does not set forth "practical

mechanics" guiding counsel's post-trial contact with jurors; rather, it constitutes an all-out ban on counsel's ability to investigate the possibility of juror misconduct.  Motion at 11:7-14.  The Government's only response is that because the jurors did not approach Robinson's counsel of their own accord and Robinson could not otherwise find evidence of juror misconduct, Opposition at 18, Robinson is simply out of luck.

The Government's arguments do not comport with *Pena-Rodriguez*.  Federal Rule of Evidence 606(b) prohibits jurors from testifying about the substance of their deliberations.  In *Pena-Rodriguez*, however, the Supreme Court held that the Sixth Amendment required that Rule 606(b), and its state equivalent, cannot bar evidence of racial animus.  137 S. Ct. 855 (2017).  Allowing a petitioner to advance evidence of a juror's racial bias is inconsistent with barring a petitioner from investigating racial bias amongst jurors.  Indeed, the Supreme Court discusses at length rules that "limit" attorneys contact with jurors and provide the jurors "some protection" when their juror obligations are complete.  *Id*. at 869.  Rules like Rule 24.1, that go beyond *limiting* contact and instead create total bans on juror interviews, render the rights articulated in *Pena-Rodriguez* meaningless.

Constitutional rights implicitly protect those closely related acts necessary to their exercise.  *Luis v. United States*, 136 S.Ct. 1083, 1097 (2016) (Thomas, J. dissenting).  Inevitably, "[t]here comes a point ... at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself."  *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting).  The Supreme Court has applied this principle in a number of cases.  For example, because criminal defendants have a right to an initial appeal, the Court has determined that defendants must also have the right to counsel for that appeal, or else the appellate right is diminished.  *Douglas v. California*, 372 U.S. 353 (1963).  And later, continuing this trend, the Court held that if defendants on appeal have a right to counsel, then that right must encompass the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  The same logic applies here:  If criminal defendants have the

constitutional right to present evidence of juror bias, then they must be given the tools to investigate that evidence, and Local Rule 24.1 bars the ability to do so.

This past term, the Supreme Court emphasized that "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Buck*, 137 S. Ct. at 778 (quoting *Rose v. Mitchell,* 443 U.S. 545, 555 (1979)); *Pena-Rodriguez*, 137 S. Ct. at 868 (same). The *Buck* court continued that:

> Relying on race to impose a criminal sanction "poisons public confidence" in the judicial process. *Davis v. Ayala,* 135 S. Ct. 2187, 2208 (2015). It thus injures not just the defendant, but "the law as an institution, … the community at large, and ... the democratic ideal reflected in the processes of our courts." *Rose,* 443 U.S. at 556 (internal quotation marks omitted). Such concerns are precisely among those we have identified as supporting relief under Rule 60(b)(6).

137 S. Ct. at 778.

Those same concerns are at issue here. Robinson has already highlighted the racial issues at play in his case and in death-penalty prosecutions at large. These issues warrant relief under Rule 60(b).

**E.    Robinson's Defective Indictment Claim**

Robinson's Fifth Amendment rights were violated when the Government failed to present the statutory aggravating factors that made Robinson eligible for the death penalty to the grand jury. *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004). However, the Fifth Circuit found that Robinson's defective indictment claim was subject to harmless error review and concluded that because Robinson was ultimately convicted beyond a reasonable doubt, a grand jury would have found the statutory aggravating factors present. *Id*. at 285.

In his Motion, Robinson has explained how *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), justifies re-opening this case under Rule 60(b). Motion at 12-19. One of

the issues *Weaver* helps to clarify is the significance of a non-waived versus a waived claim, and how the Fifth Circuit equated the two in affirming Robinson's convictions and sentences.  Motion at 16:7-21.  Since Robinson filed his Rule 60(b) motion, the Supreme Court issued *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), which further supports Robinson's argument.  In *McCoy*, the Supreme Court found that the defendant's Sixth Amendment rights were violated when his trial counsel conceded the defendant's guilt of the capital crimes over his client's in-court objection, and the Court found that this violation was structural.  The Court reconciled *McCoy* with *Florida v. Nixon*, 543 U.S. 175 (2004), where the Court found that an attorney's concession of the defendant's guilt was subject to the ineffective-assistance-of-counsel analysis, including its prejudice requirement, where the defendant fails to object to the attorney's concessions.  *McCoy*, 138 S. Ct at 1509.  The Supreme Court's continuing emphasis on preserved errors, and their significance in the structural error analysis, further undermines the Fifth Circuit's ruling in *Robinson,* 367 F.3d 278 (5th Cir. 2004).

As Robinson predicted, Motion at 18-19, the Government raises a law-of-the-case argument to assert that the Court may not re-visit the defective indictment issue.  The Government, however, does not respond to Robinson's explanation of how the law of the case doctrine does not bar this Court from reconsidering the denial of amendment.  Indeed, the law of the case doctrine does not bar relief because of an intervening change of law by the Supreme Court and because the earlier decision was clearly erroneous and would work a manifest injustice.  *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

9

## II.  CONCLUSION

For the foregoing reasons, Robinson respectfully requests that the Court grant his motion and allow him to: (1) brief his entitlement to a COA; (2) move to interview his trial jurors; and, (3) move to amend his section 2255 motion to include his defective indictment claim.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  June 13, 2018                    By */s/ Jonathan C. Aminoff*
                                         JONATHAN C. AMINOFF
                                         Deputy Federal Public Defender

## **CERTIFICATE OF SERVICE**

I certify that, on June 13, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of Texas using the Court's electronic case filing system which will generate service to Assistant United States Attorney Timothy Funnel, counsel for the United States of America.

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

11